| | |
|---|---|
| DISTRICT COURT, BOULDER COUNTY, COLORADO<br><br>Address: Boulder County Justice Center<br>1777 Sixth Street<br>Boulder, CO 80302<br>Phone: (303) 441-3750 | |
| THE VILLAS TOWNHOUSE ASSOCIATION a/k/a VILLAS WEST TOWNHOUSE ASSOCIATION (VTA), and John Doe and Jane Doe as intended beneficiaries,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN FAMILY INSURANCE GROUP d/b/a AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendants. | ▲ COURT USE ONLY ▲ |
| ATTORNEY FOR PLAINTIFF<br><br>Richard M. Kaudy, #12345<br>THE KAUDY LAW FIRM, LLC<br>333 W. Hampden Avenue, Suite 850<br>Englewood, CO 80110<br>Phone: (303) 623-1885<br>Fax: (303) 823-1825<br>E-mail: rkaudy@kaudylaw.com<br>*Of Counsel*, Merlin Law Group, P.A.<br>999 18th Street, Suite 3000,<br>Denver, CO. 80202<br>(303) 357-2374 | Case No: 2013 CV<br><br><br>Division: |
| COMPLAINT AND JURY DEMAND ||

The Plaintiff, VTA, and plaintiffs John Doe and Jane Doe, through counsel, pursuant to C.R.C.P. 8, assert and allege as follows:

1. This is an insurance case arising from the defendant refusing to provide covered benefits to the insured plaintiffs based on the insurer's interpretation of its insurance contract.

2. The plaintiff VTA is a Colorado-based business entity in good standing to serve as a townhome association for homeowners within Lafayette, Colorado for property located on at various addressed on West Simpson Place.

3. Plaintiffs John Doe and Jane Doe are among families who reside within the townhomes

**Appendix A-3**

sought to be protected by the insurance coverage purchased from the defendant.

4. The defendant represented to the plaintiffs that the coverage would enable the insured and the intended beneficiaries of the coverage – the townhome residents including plaintiffs John Doe and Jane Doe – that their dreams would be protected through the use of the defendant's insurance product and services.

5. The defendant is a foreign corporation domiciled in Wisconsin licensed to transact lawful business within Colorado involving the sales and service of insurance products and services.

6. The plaintiffs invested in insurance products and services from the defendant for coverage intended to protect the insured residential property from certain property and casualty perils.

7. The plaintiffs purchased coverage benefits from the defendant by making periodic payments called premiums.

8. In exchange for the premiums, the defendant promised to perform according to the terms and provisions of the insurance contract.

9. The plaintiffs also purchased with additional premium dollars a supplement endorsement providing for code upgrade protection so in the event additional repairs had to be made caused by a covered loss in order to meet building safety codes, the coverage would provide compensation for compliance with such regulations.

10. On or about Dec. 5, 2011, the insured premises suffered roof losses caused by a covered hailstorm occurrence as defined within policy provisions.

11. The plaintiffs requested that damage to their roofs caused by the hailstorm be repaired.

12. The investigation into the damage revealed that the wooden decking or sheathing beneath the damaged shingles was so deteriorated that the sheathing required replacement in order to comply with applicable building safety codes.

13. Based on the code upgrade endorsement purchased from the defendant, the plaintiffs requested that the defendant replace the deteriorated wooden sheathing onto which the replacement shingles were to be nailed also be replaced in order to comply with applicable building safety codes.

14. The defendant engaged an engineering firm whose research confirmed that the wooden decking onto which the shingles were to affixed was so deteriorated that the sheathing required replacement in order to comply with applicable building safety codes.

15. The plaintiffs accordingly requested that the defendant insurer replace the deteriorated wooden sheathing onto which the replacement shingles were to be nailed.

16. The defendant interpreted its insurance contract in such a fashion to deny that the wooden sheathing would be covered by the insurance policy based on its position that the wooden sheathing beneath the shingles was not damaged directly by the hailstones so would not qualify for coverage.

17. The defendant has refused to reconsider its denial of covered benefits despite repeated requests for reconsideration by the insureds.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

18. The plaintiff incorporates by reference herein the allegations asserted above as if set forth in full.

19. The defendant sold the plaintiffs policies of insurance promising to provide code upgrade protection coverage in the event additional repairs had to be initiated from repairs caused by a covered peril or occurrence such as a hail storm.

20. The plaintiffs suffered property damage caused to its insured properties and provided estimates for the costs of repairs to the defendant, which included costs to replace damaged wooden sheathing onto which the replacement shingles would be affixed.

21. The defendant interpreted its insurance contract to require that the sheathing itself be damaged directly by the hailstone strikes in order to qualify for replacement coverage instead of interpreting the contract to provide code upgrade benefits that would indemnify the insured for the costs to replace the deteriorated sheathing.

22. The defendant decided to deny contractual benefits despite repeated requests for the covered benefits by the insureds, refused to provide the contracted for benefits, denied the insureds the benefit of their bargain and breached the insurance contract, causing the insureds damages to be determined at trial but which are estimated to approximate $159,000.

## SECOND CLAIM FOR RELIEF
### (Statutory Remedies for Breach of C.R.S. §10-3-1115)

23. The plaintiffs incorporate by reference herein the allegations asserted above as if set forth in full.

24. The defendant construed its insurance contract to deny the insureds the benefit of their insurance bargain by claiming the code upgrade endorsement did not apply unless the wooden sheathing itself was directly damaged by the covered hailstone peril or occurrence.

25. The position by the defendant deprives the innocent insureds of covered benefits since the position asserted by the insurer lacks a reasonable basis upon which to deny benefits.

26. Misconstruing and misinterpreting the ambiguous insurance provisions only to deny benefits is unreasonable and provides the insurer with no safe harbor from which to claim economic sanctuary from which to resist paying contractual benefits.

27. Because the insurer lacks a reasonable basis from which to deny covered benefits by ignoring the code upgrade endorsement, the insurer is responsible to the insured for remedies as provided by C.R.S. §10-3-1116 for its violation of C.R.S. §10-3-1115.

### THIRD CLAIM FOR RELIEF
### (Breach of Covenant of Good Faith and Fair Dealing)

28. The plaintiffs incorporate by reference herein the allegations asserted above as if set forth in full.

29. The defendant insurer owes its insureds the obligation to act in good faith and fair dealing.

30. The defendant owes its insureds a non-delegable duty to investigate the claim objectively and not just to hunt for facts from which to base a claim denial.

30. The defendant insurer owes its insureds the obligation to construe the insurance contract fairly without ambiguity in order to effectuate the purposes for which the coverage was purchased.

31. The defendant owes the insureds the obligation to give equal consideration to the financial interests of the insureds and not give greater consideration to its own financial interests while handling the insureds' claim.

32. The defendant sold the insured the coverage in issue intending to provide benefits for covered losses such as hailstorms that occurred within the policy period.

33. The plaintiffs have cooperated with the defendant in the processing of the insured's claim for covered benefits.

34. The plaintiffs have not failed to minimize or mitigate their damages.

35. The plaintiffs have not erected any obstacles to the defendant's ability to investigate and evaluate the plaintiffs' claim for covered benefits.

36. The homeowners, occupants and residents of the Villas West townhomes were intended beneficiaries of the insurance contract protections purchased from the defendant.

37. The defendant knew that the policy purchased by VTA was to protect the premises of housing and shelter being provided to human beings occupying those townhomes including plaintiffs John Doe and Jane Doe.

38. The defendant knew that its decision to deny reimbursing the insureds for costs of replacing the wooden sheathing onto which replacement shingles are to be affixed was intentional and not accidental.

39. The defendant knew that its decision to deny the insured's claim here would cause emotional distress and harm on the intended beneficiaries of the insurance policy, namely the homeowners and residents occupying those insured townhomes.

40. The defendant knew it owed an obligation of good faith and fair dealing to the insureds.

41. The defendant knew its denial of coverage would cause hardship to the insureds.

42. The defendant breached these obligations by denying the insureds' claim based on the assertions of adjuster Harold Miller that the code upgrade coverage would not apply because the wooden sheathing itself was not directly damaged by the hailstone strikes.

43. The defendant breached its duty of good faith and fair dealing by, among other things, failing to conduct a proper investigation into the occurrence and for interpreting its insurance contract to default to denial of benefits instead of harmonizing the provisions to provide the covered benefits the insured's premiums were intended to purchase.

44. The defendant's breach of its covenant of good faith and fair dealing amounts to bad faith breach of the insurance contract, causing its insured the plaintiffs to incur injuries, damages and losses in amounts to be determined at trial.

**WHEREFORE,** the plaintiffs respectfully pray for judgment on their behalf, for costs, interest, expert fees, and any other relief authorized by statute or law.

## JURY TRIAL DEMANDED

Respectfully submitted this 25th day of June, 2013.

The Kaudy Law Firm, L.L.C.

*A duly signed original is on file at The Kaudy Law Firm, L.L.C.*

*s/ Richard M. Kaudy*
Richard M. Kaudy, #12345
*Attorney for the Plaintiff*